IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Raymone Crockwell,                )
                                  )
        *Plaintiff*,              )
                                  )
    -vs-                          )   No. 15-cv-825
                                  )
Thomas Dart, Sheriff of Cook County,  )   *(Judge Shah)*
and Cook County,                  )
                                  )
        *Defendants*.             )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, who uses a wheelchair to ambulate, suffered personal injuries when he was deprived of rights secured by the Americans with Disabilities Act and the Rehabilitation Act while detained at the Cook County Jail.

Plaintiff seeks summary judgment on liability on two ADA claims: First, that defendants' decision to provide him with a non-ADA compliant device to assist him in using an inaccessible toilet caused plaintiff to incur personal injuries. Second, that defendants failed to accommodate plaintiff's disability when they required him to navigate without assistance steep ramps to and from appearances in his criminal case at the Leighton Courthouse and failed to provide an accessible toilet when he made those appearances. The legal and factual questions of plaintiff's second claim were adjudicated against defendants in *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015).

Defendants seek summary judgment on all of plaintiff's claims under the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983. Plaintiff acquiesces in

judgment on his claims under § 1983. Plaintiff shows below that defendants' motions should be denied as to plaintiff's claims under the ADA and Rehabilitation Act, and plaintiff's motion should be granted as to liability for two of his claims under the ADA.

### I. Facts

Plaintiff Raymone Crockwell, who uses a wheelchair to ambulate was detained at the Cook County Jail from June 6, 2012 to March 29, 2013. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶¶ 1, 2.)

In August 2012, plaintiff was assigned to a housing unit at the Jail known as Division 2, M House. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 8.) While plaintiff was housed in Division 2, M House, the accessible toilet was broken. (*Id.* ¶ 10.) Plaintiff reported the broken toilet to correctional officers, who told him they could not do anything about it. (*Id.* ¶ 11.) As a result, plaintiff was forced to use a regular toilet with the assistance of a toilet seat cover every time he used the toilet. (*Id.* ¶ 12.) Plaintiff knew that the toilet cover was unstable, but it was the only thing he had to use. (*Id.* ¶ 14.) Plaintiff fell to the ground because the toilet seat cover was unstable. (*Id.* ¶ 15.) As a result of the fall, plaintiff had back pains and pains in his hip. (*Id.* ¶ 16.)

While detained at the Jail, plaintiff attended court at the Leighton Courthouse about once each month. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 17.) Wheelchair-using detainees attending court at the Leighton Courthouse are held in the basement at or around bullpen

34 in division 5 ("Bullpen 34/5") for several hours before being brought to their court appearance. (*Id.* ¶ 18.) An accessible toilet and sink were not provided to detainees waiting for court appearances at the Leighton Courthouse until the end of March 2015 when renovations to the toilet facilities in "Bullpen 34/5" were completed. (*Id.* ¶ 19.) As a result of the absence of accessible toilet facilities, plaintiff was unable to use a bathroom while being transported between the Jail and the Leighton Courthouse and was forced to urinate on himself and defecate on himself. (*Id.* ¶ 20.) Wheelchair-using detainees attending court at the Leighton Courthouse must also navigate up and down steep ramps that do not comply with the ADA. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 22.)

In *Lacy v. Dart and Cook County*, 14-cv-6259, the United States District Court for the Northern District of Illinois held that defendants had violated the ADA when they denied wheelchair-using detainees "access on the same basis as non-disabled detainees to bathroom facilities at the six courthouses [including Leighton]" and by requiring wheelchair-using detainee to navigate, without assistance, up and down the steep ramp to the Leighton Courthouse. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶¶ 21, 23.)

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment is not appropriate if there is a "genuine" dispute about a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Mere "metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff shows below that the undisputed facts require the grant of summary judgment on liability for two parts of plaintiff's claims.

### III. The Statutory Framework

Title II of the ADA, 42 U.S.C. §§12131-12165 *et seq.*, applies to "public entities," including prisons and jails, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998), and requires, *inter alia*, that jails accommodate prisoners with disabilities, as well as those who are regarded as disabled.[1]

The Sheriff of Cook County is responsible for the care and custody of courthouses in Cook County, as well as for the care and custody of detainees at the Cook County Jail. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 3.) Cook County owns and controls funding for the construction and modification of the Jail and the courthouses in Cook County. (*Id.* ¶ 4.) Both are public entities subject to suit under the ADA. (*Id.* ¶ 5.)

---

[1] The ADA defines "public entity" to include "any State or local government" and "any department, agency . . . or other instrumentality of a State," 42 U.S.C. § 12131(1). Defendants showed that they "regarded" plaintiff as disabled under 42 U.S.C. § 12102(1)(C). by providing him with a wheelchair. *Lacy v. Dart,* No. 14 C 6259, 2015 WL 1995576, at *2 (N.D. Ill. Apr. 30, 2015). See *infra* at 6.

Principles of respondeat superior apply to actions under the ADA. *Delano–Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574–75 (5th Cir. 2002); *Duvall v. Cnty. of Kitsap*, 260 F.3d 11124 (9th Cir. 2001). In *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996), the Seventh Circuit set out the three elements a plaintiff must prove to establish an ADA claim:

1. That he (or she) is a "qualified person with a disability."

2. That he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such entity, and

3. That the denial or discrimination was "by reason of his [or her] disability."

To obtain damages under the ADA, a plaintiff must prove intentional discrimination, although "there is a split over the appropriate standard for showing intentional discrimination." *CTL ex rel. Trebatoski v. Ashland School Distr.*, 743 F.3d 524, 528 n.4 (7th Cir. 2014). As the Court of Appeals noted in *CTL*, "deliberate indifference" is the majority rule for showing intentional discrimination. *S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013). The Seventh Circuit, however, has not decisively decided this issue. *Strominger v. Beck*, 592 F. App'x. 508, 511-12 (7th Cir. 2014).

### IV. The Undisputed Facts Show that the Unstable Toilet Cover the Plaintiff Was Forced to Use in Division 2, M House Violated the ADA

#### A. Plaintiff is a Qualified Person with a Disability

There is no dispute that plaintiff needs the assistance of a wheelchair. (Defendants' Local Rule 56.1 Statement, ECF No. 59, ¶ 4.) An individual who

uses a wheelchair is "disabled within the meaning [of the ADA]." *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (citing 42 U.S.C.A. § 12102(1)(A)).

### B. Plaintiff Was Denied Services, Programs, or Activities because of His Disability

Under the ADA, a covered entity must "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (citing 42 U.S.C. § 12131(2)). Title II requires "program access," which means that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In other words, "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). And toilets made available to inmates are a "program or activity" under the ADA. *Bramlett v. Dart*, No. 14–C–5939, 2015 WL 4148711, at *3 (N.D. Ill. July 9, 2015);

For facilities built after 1992, the ADA requires compliance with specific architectural accessibility standards. *Lane*, 541 U.S. at 532. But even older buildings must provide the program access required by Title II and the most recent ADA standards "provide guidance as to whether an existing facility is readily accessible and usable by individuals with disabilities." *Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 617 (E.D.N.Y. 2010); *Flynn v. Doyle*, 672 F. Supp.

-6-

2d 858, 879-80 (E.D. Wis. 2009); *Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 226 (S.D.N.Y. 1999).

Defendants sought to satisfy their obligations under the ADA by providing an accessible toilet in Division 2, M House, but this toilet was broken for the nearly three-month period that plaintiff was housed there. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 10.) As a result, plaintiff was required to use a regular toilet with the assistance of a toilet seat cover every time he used the toilet. (*Id.* ¶ 12.) Plaintiff knew that the toilet seat cover was unstable, but it was the only thing he had to use. (*Id.* ¶ 14.)

In *Wisconsin Comm'y Servs., Inc. v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006), the Court of Appeals held that to prove a claim under the ADA, the [p]laintiff must show that but for his disability, "he would have been able to access the services or benefits desired." *Id.* at 752. Plaintiff meets this standard because he would have been able to access the toilet without limitation had he not been disabled. Because of his disability, however, plaintiff could only use the toilet if defendants provided him with a proper accommodation. This defendants failed to do. This case is therefore distinguishable from *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015), where the plaintiff did not allege a denial of access. Plaintiff has shown that his inability to use the inaccessible toilet was a denial of "all access." *Love*, 103 F.3d at 560. Plaintiff has also shown that he was harmed

because of this denial of access.[2] (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 16.)

### C. Defendants are Liable for Damages under the ADA

The Seventh Circuit has explained that deliberate indifference is the "functional equivalent of intent," *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). In a jail setting, "unacceptable conditions are actionable constitutional violations because they are consequences of deliberate decisions (as in 'deliberate indifference')—namely the decisions to incarcerate persons who by being incarcerated in Cook County Jail are subjected to unconstitutional conditions of confinement." *United States v. Cook County*, 761 F. Supp. 2d 794, 798 (N.D. Ill. 2011) (3-judge court). Defendants' decision to incarcerate a disabled individual such as plaintiff despite the lack of accessible housing for that individual— whether because of overcrowding, a broken toilet, or any other reason— constitutes deliberate indifference entitling plaintiff to damages under the ADA.

Likewise, the intentional acts of defendants' personnel in assigning plaintiff to a housing unit without a working accessible toilet amounts to deliberate indifference. As the Seventh Circuit has held, failing to accommodate an inmate's disability by refusing to assign the inmate to an accessible cell

---

[2] Defendant Cook County argues that it is entitled to summary judgment because plaintiff did not suffer more than *de minimis* harm. (ECF No. 60 at 11.) The Eighth Amendment conditions of confinement case on which defendant seeks to rely, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), is inapposite. The Seventh Circuit's opinion in *Jaros v. Illinois Department of Corrections*, 684 F.3d 667 (7th Cir. 2012), explains the difference between such a claim and the ADA claims brought by plaintiff.

violates the ADA. *Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012),

The need for accessible facilities for disabled detainees was well settled in 2012 when defendant Sheriff accepted plaintiff into the Jail. In 1998, the Supreme Court held conclusively that the ADA applies to jails and prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). As the ADA regulations explain, "correctional and detention facilities operated by or on behalf of public entities have always been subject to the nondiscrimination and program accessibility requirements of title II of the ADA." 28 C.F.R. Pt. 35, App. A at 641 (2010). Indeed, defendants acknowledged their duty to provide accessible housing in the agreed order entered in *United States v. Cook County*, 10-cv-2946 in May 2010. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 28.)

Another component of deliberate indifference is the knowing disregard of an excessive risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The undisputed evidence shows that defendants knew of the need for safe accessible toilets because of the *Phipps* litigation. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶¶ 25-27.)

Defendants argue that they lacked knowledge sufficient to demonstrate deliberate indifference because plaintiff failed to notify them of his needs. (ECF No. 60 at 8-9; ECF No. 62 at 7-8.) This is wrong as a factual matter: it is undisputed that plaintiff reported the broken toilet to correctional officers, who told him they could not do anything about it (Plaintiff's Statement Pursuant to

Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶ 11.) More important, defendant have not cited any cases to support their interpretation of the ADA. As another judge of this district reminded defendants in previous litigation involving accessibility at the Cook County Jail, "the defendants are wrong in assuming that it was necessary for the plaintiffs to have requested the specific accommodations in question. Strictly speaking, the ADA embodies no such requirement." *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 926 (N.D. Ill. 2009).

Defendants seek to rely, (ECF No. 60 at 9; No. 62 at 7-8), on the ruling in *McKinnie v. Dart*, No. 14 C 9588, 2015 WL 5675425 (N.D. Ill. Sept. 24, 2015), which rejected similar motions for summary judgment by the defendants in an ADA case at the Jail. The Court in *McKinnie* relied on evidence that the plaintiff had requested an accommodation, but concluded that such requests were not necessary. *Id.* at *7. The plaintiff in *McKinnie* had a prosthetic leg, so "even if Plaintiff had not made these requests, there nonetheless would be a triable issue of fact as to whether Plaintiff's need for housing accommodations was 'obvious.'" *Id.* at *6. This reasoning applies with equal force to plaintiff here; as a wheelchair user, his need for an accommodation was obvious. *See also Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1197–98 (10th Cir. 2007).[3]

---

[3] Defendant Cook County repeats the argument about plaintiff's failure to request an accommodation under an inventive theory of "estoppel." (ECF No. 60 at 12-13.) Defendant does not cite a single ADA case to support its theory, which appears to be an attempt to re-argue defendants' position that the Prison Litigation Reform Act bars this lawsuit. The Court has already rejected this position. ECF No. 49.

Despite the resolution of *Phipps* in 2010, the Sheriff did not adopt any corrective policy until August 2014 and he did not adopt further policies about communication and interaction with persons with disabilities until March 2015. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶¶ 29-30.) Thus, for four years, the Sheriff ignored the known risk to people with disabilities. *Farmer*, 511 U.S. at 837. The recent adoption of policies shows the feasibility of such measures, and further demonstrates the Sheriff's deliberate indifference. *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015) (defining deliberate indifference as "knowing of a serious risk but refusing to do anything to prevent it from materializing though prevention would be feasible").

On facts similar to those presented by the plaintiff in this case, the court in *Lacy v. Dart*, No. 14 C 6259, 2015 WL 7351752, at *3-*4 (N.D. Ill. Nov. 19, 2015), found the undisputed evidence showed deliberate indifference and granted summary judgment against defendants on claims under the ADA.

Defendants fail to address the actual harm that plaintiff suffered in their arguments on the second prong of deliberate indifference. (ECF No. 60 at 9-10; ECF No. 62 at 9.) They ignore the inaccessible conditions plaintiff faced through his time at the Jail. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶¶ 31-34.) And both defendants seek to excuse their failure to have repaired a broken toilet for more than two months, but neither defendant disputes that the toilet was broken. Defendant Cook County seems to suggest, without any support, that such disrepair is normal. (ECF No. 60 at 10.)

Defendant Sheriff points to work orders and general testimony about maintenance, but does not dispute that the toilet was broken. (ECF No. 62 at 8-9.) Because there is no dispute that defendants' failure to provide a safe and accessible way for plaintiff to use the toilet constituted deliberate indifference, the Court should grant summary judgment on liability on this claim.

### V. Under the Doctrine of Issue Preclusion, the Court Should Grant Judgment on Plaintiff's Claim about the Steep Ramps between the Jail and the Leighton Courthouse and Defendants' Failure to Provide an Accessible Toilet at the Leighton Courthouse.

In *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015), the court held that conditions for wheelchair-using detainees at the County Courthouses during the time period that plaintiff attended court violated the Americans with Disabilities Act. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶¶ 21, 23.) Defendants' briefs do not mention *Lacy* and barely mention plaintiff's courthouse claim at all. (ECF No. 60 at 4, 10-11; 62 at 8-9.)

Under the doctrine of issue preclusion, "'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). The claim in *Lacy* was a federal claim under the Americans with Disabilities Act and it was decided in federal court. "The federal law of claim preclusion applies here because the

earlier judgment was rendered by a federal court." *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). Under federal law, the doctrine of collateral estoppel "requires only a judgment that is final in the court rendering it, and not a judgment that is final after exhaustion of appellate remedies." *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1000-01 (7th Cir. 1996).

> As the *Lacy* court explained,
>
> [D]etainees [like plaintiff] with appearances at the Leighton courthouse maneuver a ramp in the tunnel between the Cook County Jail and the courthouse's lower-level staging area. The parties agree that the ramps leading to the lower-level holding cells at each of the six courthouses are not compliant with current ADA slope or landing requirements, and that a reasonable accommodation is for defendants' employees to push wheelchair-using detainees up and down the ramps. Although defendants' witnesses testified that there is a policy and practice requiring wheelchair-using detainees to be pushed up and down the courthouse ramps, plaintiffs complain that wheelchair-using detainees are frequently unassisted.

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *5 (N.D. Ill. Oct. 8, 2015). The *Lacy* court ultimately held that "plaintiffs' rights under the ADA have been violated in the past with respect to the courthouse ramps," explaining that,

> Although defendants presented evidence that it is their policy and practice to assist wheelchair-using detainees maneuvering the courthouse ramps as a reasonable accommodation to overcome the ramp' steep slopes, such a policy can qualify as a reasonable accommodation only if it is consistently practiced. The evidence here, however, establishes that the policy was not in fact consistently observed in the past.

*Id.* at *11.

> With respect to toilets, the *Lacy* court explained that

> [N]one of the holding cell bathroom facilities in any of the six courthouses (with the exception of two upper-level holding cells at the Maywood courthouse) were ADA complaint at the time this lawsuit was filed in August 2014. To overcome structural barriers in accessing the toilet facilities, defendants began providing wheelchair-using detainees with portable commode chairs in the Spring of 2014. However, the record is devoid of any evidence that the commode chairs actually assisted wheelchair-using detainees use the restroom facilities, let alone solved accessibility problems with the holding cell sinks that were located behind the toilets.

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *11 (N.D. Ill. Oct. 8, 2015).

Accordingly, the Court *Lacy* court concluded that

> Given that defendants did not consistently assist wheelchair-using detainees up and down courthouse ramps or provide a reasonable accommodation to allow wheelchair-using detainees to use holding cell bathroom facilities on the same basis as non-disabled detainees, the court finds that defendants have, in the past, violated plaintiffs' rights pursuant to the ADA.

*Id.* at *14.

The undisputed evidence shows that plaintiff was subjected to the same ramps and toilet facilities as the plaintiffs in *Lacy*. (Plaintiff's Statement Pursuant to Local Rules 56.1(a)(3) and 56.1(b)(3)(C) ¶¶ 17, 20.) Plaintiff's claim about the ramps and toilets therefore raises the same issue adjudicated in *Lacy*

The *Lacy* court ultimately concluded that the plaintiff class was entitled to summary judgment on liability on their claims about steep ramps and inaccessible toilet facilities because defendants were on notice of the need to accommodate the plaintiffs' disabilities:

> Because defendants were on notice of the need to provide accommodations for wheelchair-using detainees attending court at the six courthouses as early as 1999, their deliberate decision not to

> provide such assistance prior to 2014 establishes intentional discrimination.

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 7351752, at *4 (N.D. Ill. Nov. 19, 2015). Again, this is the same issue presented by plaintiff in this case.

In addition, the issues in *Lacy* were actually litigated. 2015 WL 7351752 at *1-*2 (referring to the "extensive factual and evidentiary history of this case" and "seven days of evidentiary hearing, multiple pre and post-hearing briefs, and additional submissions of evidence"). Resolution of the questions at issue in this case were essential to the grant of summary judgment in *Lacy*, and the judgment was final in the court rendering it.[4] Finally, the defendants in *Lacy* were vigorously represented by highly competent attorneys from the office of the State's Attorney of Cook County. Thus, all prerequisites for the application of issue preclusion are satisfied. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Plaintiff is entitled to summary judgment on his claims about the Leighton Courthouse.

### VI. Conclusion

For the reasons above stated, the Court should enter partial summary judgment on liability in favor of plaintiff on the claims discussed above.

---

[4] The district court in *Lacy* relied on the evidence adduced at the trial on the injunctive relief class claim in granting summary judgment to the individual plaintiffs on liability on their individual damage claims.

Respectfully submitted,

/s/ <u>Joel A. Flaxman</u>
Joel A. Flaxman
ARDC No. 6292818
Kenneth N. Flaxman
200 S. Michigan Ave., Ste 201
Chicago, Illinois 60604
(312) 427-3200

Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10150 S. Western Ave.
Suite Rear
Chicago, Illinois 60643
(773) 233-7900
*Attorneys for Plaintiffs*