# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RAYMONE CROCKWELL,

      Plaintiff,

  v.

THOMAS DART, SHERIFF OF COOK COUNTY, and COOK COUNTY, ILLINOIS.

      Defendants.

No. 15 CV 825

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Raymone Crockwell, who uses a wheelchair, was a pretrial detainee at the Cook County Jail in 2012 and 2013. He sued Cook County and the Sheriff, Thomas Dart, under: § 202 of the Americans with Disabilities Act, 42 U.S.C 12132; § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a); and 42 U.S.C. § 1983. [24].[1] Defendants move for summary judgment, [58], [61], on all of Crockwell's claims. Crockwell acquiesces to judgment on his § 1983 claims, [67] at 1–2, and moves for partial summary judgment on liability two of his ADA claims. [64].

For the following reasons, defendants are granted summary judgment on Crockwell's § 1983 claims and on some of his ADA claims, and Crockwell is granted summary judgment as to liability on his ADA claims concerning the M-house and Leighton courthouse toilets.

---

[1] Bracketed numbers refer to district court docket entries.

I. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Cross-motions [for summary judgment] must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 Fed. App'x 92, 95 (7th Cir. 2012) (citing *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011)).

II. **Background**[2]

After a gunshot wound in 2009, Raymone Crockwell became a paraplegic, unable to use his lower body and needing a wheelchair to ambulate. [65] ¶ 4; [71] ¶ 2. His physical condition required the use of catheters to urinate, and he needed to manually evacuate his bowels with a gloved hand. [65] ¶ 13. Crockwell was in custody at the Cook County Jail from June 6, 2012 through March 29, 2013. [65]

---

[2] In several instances, defendants admit Crockwell's statement of facts, but dispute the veracity of his testimony without citing to any controverting evidence in the record, which is insufficient to create a factual dispute at summary judgment under Local Rule 56.1. *See, e.g.,* [71] ¶¶ 14, 16, 20.

2

¶ 5; [71] ¶ 1. The first day he was at the jail, Crockwell was housed in Division 10, which was not accessible for a wheelchair-using detainee. [71] ¶ 31.[3] He did not shower or relieve himself for the entire day he was in Division 10, but he did not request a shower or bathroom, and he was eventually moved to Division 2. [71] ¶ 31. Except for three days in January 2013 when he was placed in isolation, Crockwell was housed in Division 2, Dorm 2 for the remaining several months. He was assigned to live in M-house from June 7, 2012 until August 28, 2012, and in N-house from August 28, 2012 through March 29, 2013. [65] ¶¶ 7–8; [71] ¶¶ 8, 33.

During his time in Division 2, Crockwell was never unable to shower although at times the shower handrail was loose and sometimes the shower was broken. [71] ¶ 32. There was never a shortage of catheters or gloves for his use, [65] ¶¶ 13, 36, but while he was in the M-house, the ADA-accessible toilet broke.[4] [65] ¶ 16; [71] ¶ 10. Crockwell had to use a regular toilet with the assistance of a toilet seat cover, which raised the height of the non-accessible toilet seat and was unstable. [71] ¶¶ 12–14. He reported the broken toilet to correctional officers, who told them they could not do anything about it. [71] ¶ 11. Crockwell tried to use the regular toilet but fell to the ground on one occasion in August 2012 because the cover was unstable. [65] ¶¶ 16–17; [71] ¶¶ 10, 15. After the fall, Crockwell experienced hip and back pains lasting until the next day. [65] ¶ 18; [71] ¶ 16. He

---

[3] Defendants deny this statement of fact but do not cite to any evidence in the record that controverts Crockwell's testimony that the tier was not wheelchair-accessible.

[4] Although Crockwell fell off the unstable toilet sometime after August 7, 2012 ([65] ¶¶ 16–17; [59-1] at 112–13), the parties do not specify approximately when the toilet seat broke.

received ibuprofen from another detainee and informed a correctional officer that he had fallen, but he did not go to the hospital, and he has not sought treatment for a back injury since leaving the jail. [65] ¶¶ 18, 28. There were work orders to repair handicap railings in the M-house bathroom on June 21, July, 9, and August 23, 2012, [65] ¶ 20,[5] but no orders to fix the ADA-accessible toilet or any toilet seat during that time; in August 2012, multiple bathroom inspections noted that the toilet was not working. [71] ¶ 10; [66] at 74–80. While the ADA toilet was inoperable, Crockwell never asked to be taken to another toilet or moved from that division. [65] ¶ 29. Crockwell submitted no grievances during the nine months he was at the jail and did not inform either of the two social workers assigned to his dorm in the M-house that there were any problems with any of the facilities. [65] ¶ 26, 31.

Crockwell did not have any problems using bathroom facilities while he was assigned to the N-house. [65] ¶ 19. Even when shower rails became loose, they were still usable and were fixed. [65] ¶ 15. When the toilets required periodic maintenance, they were fixed and regular toilets were available with handicapped chairs. [65] ¶ 15. For a few days in January 2013, Crockwell was held in an isolation cell because he exhibited flu-like symptoms, and he was unable to use the isolation cell shower because of his disability. [71] ¶¶ 33–34.

---

[5] Crockwell objects to this statement of fact because it cites to an exhibit of work orders without including a pincite to the relevant pages. Exhibit E consists of only four pages of work orders listed by date, and the entries are easily reviewable. *See* [59-5].

4

While detained at the jail, Crockwell was required to attend hearings at the Leighton courthouse on a near-monthly basis. [71] ¶ 17. Wheelchair-using detainees were brought out of their living unit to a tunnel area before being brought over the Leighton court building and were the last persons to be called in the morning. [71] ¶ 18.[6] While waiting for court, Crockwell's wheelchair did not fit in the bullpen bathroom. [65] ¶ 21. Prior to April 2014, no ADA-accessible bathroom was available to detainees at the Leighton court building. [71] ¶ 19.[7] As a result, Crockwell was unable to use a bathroom and at times soiled himself. [65] ¶ 21; [71] ¶ 20.

## III. ADA and Rehabilitation Act Claims

Defendants seek summary judgment on Crockwell's ADA and Rehabilitation Act claims. To establish a violation of Title II of the ADA, Crockwell must show that (1) he is a "qualified individual with a disability," (2) he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by an entity, and (3) the denial or discrimination was "by reason of" his disability. *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). The Rehabilitation Act claim is functionally identical, with the additional requirement that the relevant state agency accept federal funds, which all states do. *Wagoner v.*

---

[6] Defendants deny the characterization of the trial testimony from the assistant chief at the Leighton court building, but do not object to its admission. He testified that wheelchair-using detainees were taken through the tunnel and were the last to be heard for morning hearings. [66] at 94–95; *see also Lacy v. Dart*, No. 14 C 6259, 2015 WL 5921810, at *7 (N.D. Ill. Oct. 8, 2015).

[7] Defendants dispute this testimony, but it clearly indicates that alternatives to accessible bathrooms (such as the introduction of a portable commode) were not developed until April 2014, a year after Crockwell had left the jail. [66] at 90.

5

*Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). There is no dispute that the Sheriff and Cook County are "public entities" subject to Title II of the ADA. [71] ¶ 5.

To recover compensatory damages for alleged violations of the ADA or Rehabilitation Act, Crockwell must show that the discrimination was intentional. *Strominger v. Brock*, 592 Fed. App'x 508, 511 (7th Cir. 2014). The Seventh Circuit has yet to decide whether discriminatory animus or deliberate indifference is required to show intentional discrimination, but mere negligence is insufficient under either standard. *Id*. The parties agree that Crockwell is a qualified individual with a disability. They dispute whether he was denied access to services (or was subjected to other discrimination) on the basis of his disability and whether there is sufficient evidence in the factual record to show intentional discrimination.

A. **Cook County Jail**

Defendants argue that difficulty accessing toilets and showers are de minimis inconveniences, not denial of access to services that would support a claim under the ADA or Rehabilitation Act. However, "[r]efusing to make reasonable accommodations is tantamount to denying access," *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), and it is well established that access to toilets and showers—whether at a jail or at a courthouse—is considered access to services, programs, or activities under the ADA.[8] *See id.* ("Although incarceration is not a

---

[8] Defendants moved for summary judgment on both Crockwell's ADA and Rehabilitation Act claims, but Crockwell only moved for summary judgment on his ADA claims. Because he can have but one recovery under either the ADA or the Rehabilitation Act, the court need not address the Rehabilitation Act claims separately. *See, e.g., Jaros*, 684 F.3d at 672

6

program or activity [under the ADA], the meals and showers made available to inmates are."); *Phipps v. Sheriff of Cook Cty.*, 681 F.Supp.2d 899, 916 (N.D. Ill. 2009) (collecting cases holding that "showering, toileting, and lavatory use were regarded as programs and/or services under the ADA").

Defendants also contend that because Crockwell never filed a grievance or asked for a transfer, they were never on notice of Crockwell's needs and therefore cannot have intentionally discriminated against him. They also argue that Crockwell should be equitably estopped from pursuing an ADA claim when he never filed a grievance while in jail. However, "[w]hen a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007). "Title II of the ADA requires affirmative, proactive accommodations necessary to ensure meaningful access to public services and programs, not accommodation upon request," otherwise "public entities could simply avoid the ADA structural standards in favor of providing an aid or beneficiary, and then avoid affirmative compliance altogether by awaiting requests for individual assistance." *Clemons v. Dart*, No. 13 C 02356, 2016 WL 890697, at *6 (N.D. Ill. Mar. 9, 2016). Defendants had notice of Crockwell's disability—his use of the wheelchair was obvious, and he was being supplied with catheters and gloves to

---

(dispensing with ADA claim in lieu of Rehabilitation Act claim as a practical matter since the plaintiff "can have but one recovery" under either statute).

urinate and defecate because he did not have the use of his lower body. Crockwell's failure to grieve these issues is not fatal to his claims.

Crockwell, however, cannot show that he was denied access to showers or toilets while housed in N-house from late August 2012 through March 2013. He admitted at his deposition that he had no real issues using the bathroom facilities at the N-house and that accessible bathroom features were quickly repaired when maintenance was necessary. His brief placements in Division 10 and the isolation cell show, at most, isolated and temporary incidents of negligence—on this record, Crockwell cannot show intentional discrimination for these particular housing assignments. While Division 10 was not ADA-accessible, he was moved out of that placement within approximately a day because it was not accessible. Similarly, he was placed in isolation because he had flu-like symptoms, and while he could not shower during that time, it was only for three days. *See, e.g., Strominger*, 592 Fed. App'x at 511 (prison's actions in transferring wheelchair-using inmate, who had been found concealing a shank, to a less accessible cell for eight days "rose at worse to the level of negligence"); *Morris v. Kingston*, 368 Fed. App'x 686, 690 (7th Cir. 2010) (prison officials' 17-day delay in developing a system for notifying hearing-disabled inmate of meals, medicine, showers, and recreation was at worse negligence and insufficient to support a Title II claim). Defendants' motion for summary judgment as to any disability discrimination claims arising out of N-house, Division 10, and the isolation cell is granted.

Crockwell's stay in the M-house is another matter, however. While he was never unable to shower, despite the shower or the handrail being occasionally broken, the record shows that Crockwell was denied access to an ADA-accessible toilet for nearly a month or more during his placement in M-house.[9] It is undisputed that the accessible toilet broke during his stay in M-house, after which Crockwell had to use the broken toilet seat or a regular toilet seat with an unstable toilet seat cover for the remainder of his stay in M-house. He even suffered a painful fall from the unstable seat in August 2012. Crockwell informed a correctional officer about the problem but was told nothing could be done. The fact that Crockwell occasionally saw a maintenance man in M-house is not evidence showing that the toilet was fixed, and the record indicates otherwise. The undisputed evidence in the record shows that not only were correctional officers informed of the problem, but that during the relevant time, inspections of the bathroom repeatedly noticed a broken toilet and none of the M-house work orders were for toilet repair. And while defendants argue that Crockwell could at least use a toilet, even if it was not accessible, the point is that "[r]efusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672. Not only was Crockwell hurt while attempting to use the non-accessible toilet, but he risked injury every time he used the unstable toilet seat cover.

---

[9] Defendants' motion for summary judgment is granted as to any claims concerning access to showers. It is undisputed that Crockwell's access to showers was not unreasonably limited or compromised, and on the few occasions where his shower access was somewhat restricted (either because of loose rails or his detention in the isolation cell), the restrictions were not the product of intentional discrimination.

These facts are undisputed and are sufficient to establish intentional discrimination under the deliberate indifference standard.[10] Deliberate indifference exists where a prison official realizes that there is a substantial risk that a person's federally protected right will be violated, but recklessly disregards that risk. *See Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (In the ADA context, "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood."). Defendants had notice of Crockwell's inability to use the lower half of his body, yet did not keep the ADA-compliant toilet in repair. Moreover, Crockwell informed correctional officers that the toilet was broken, but was told that nothing could be done. These undisputed facts establish deliberate indifference. *See, e.g., Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) ("[P]risoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference."); *Clemons*, 2016 WL 890697, at *7 (Sheriff and Cook County were deliberately indifferent in assigning wheelchair-using inmate to non-ADA compliant cell because "[i]f it was not immediately apparent that [plaintiff] needed an ADA compliant cell, this need should have become readily apparent once [plaintiff] fell and injured himself while attempting to transfer from his wheelchair to the non-ADA compliant shower chair").

---

[10] Although the Seventh Circuit has not yet ruled on the issue, the majority of circuits and courts in this district have adopted a deliberate indifference standard. *See Lacy v. Dart*, No. 14 C 6259, 2015 WL 7351752, at *3 (N.D. Ill. Nov. 19, 2015) (collecting cases). Like the parties, I assume the deliberate indifference standard applies.

### B. Leighton Courthouse

On the undisputed record, Crockwell was also denied use of an accessible bathroom during his near-monthly appearances at the Leighton courthouse, resulting in him soiling himself on multiple occasions. His use of a wheelchair and inability to use the lower part of his body was known to defendants, yet he was not provided with an accessible toilet or access to a bathroom that could fit his wheelchair. These facts are sufficient to establish deliberate indifference—defendants were aware of his need and turned a blind eye to it. Even if these facts alone were insufficient to establish intentional discrimination, defendants are precluded from relitigating the issue of intentional discrimination against wheelchair-using detainees at the Leighton courthouse prior to April 2014 by *Lacy v. Dart*, No. 14 C 6259 (N.D. Ill.).

The plaintiffs in *Lacy* were wheelchair-using detainees held at the Cook County Jail who complained that they were subject to numerous ADA and Rehabilitation Act violations in connection with their criminal court appearances, including the Leighton courthouse. *Lacy*, 2015 WL 7351752, at *1 (N.D. Ill. Nov. 19, 2015). The Sheriff and Cook County were both parties to that lawsuit. In April 2015, the court certified a class under Federal Rule of Civil Procedure 23(b)(2) of "All Cook County Jail detainees who have been assigned and currently use a wheelchair," *Lacy*, 2015 WL 1995576, at *7 (N.D. Ill. April 30, 2015), and in October 2015, the court granted in part plaintiffs' request for injunctive relief. *Lacy*, 2015 WL 5921810 (N.D. Ill. Oct. 8, 2015). The parties agreed that the bathroom facilities in the courthouse holding cells were not compliant with ADA accessibility

standards, and the court concluded that wheelchair-using detainees were without an accommodation until early 2014 and that a portable commode in use after 2014 was not equal access to bathroom facilities. *Lacy*, 2015 WL 5921810, at *6–7, 11–12; *Lacy*, 2015 WL 7351752, at *2. The individual plaintiffs then moved for partial summary judgment on their individual ADA and Rehabilitation Act claims, and defendants moved for summary judgment as to all of plaintiffs' claims. The court ruled in favor of plaintiffs on liability for their ADA and Rehabilitation Act claims, finding that defendants were on notice of the need to provide accommodations for wheelchair-using detainees attending court as early as 1999 and that the defendants' deliberate decision not to provide such assistance prior to 2014 established intentional discrimination. *Lacy*, 2015 WL 7351752, at *3–4.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). The doctrine of issue preclusion prevents relitigation of issues when: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom issue preclusion is invoked must have been fully represented in the prior action. *Id*. at 736.

The elements for issue preclusion are met here. The Sheriff and Cook County were fully represented by the Cook County State's Attorney in *Lacy*. Crockwell seeks to preclude defendants from relitigating the issue of whether the Sheriff and

Cook County intentionally discriminated against Crockwell—a wheelchair-using detainee who appeared at the Leighton courthouse prior to April 2014—by failing to provide him with access to bathroom facilities at the Leighton courthouse on the basis of his disability.[11] The issue litigated in *Lacy* was identical: whether the Sheriff and Cook County intentionally discriminated against wheelchair-using detainees, prior to April 2014, by failing to provide access to bathroom facilities at the Leighton courthouse. The issue was "actually litigated" in *Lacy*. In addition to the summary judgment briefing, there were seven days of evidentiary hearings, multiple pre and post-hearing briefs, and additional submissions of evidence prior to the court's October 2015 injunction order. *See Lacy*, 2015 WL 7351752, at *1–2. The issue of intentional discrimination was also essential to the judgment in *Lacy*.

While defendants argue that there is no "final judgment" in *Lacy* because final judgment has not yet been entered and an appeal has not yet been heard,[12] the defendants mistakenly look to cases following Illinois common law on issue preclusion, not federal common law. The Seventh Circuit, however, has adopted a "relaxed concept of finality, at least for purposes of collateral estoppel, or issue preclusion" and has held that "a judgment can have the requisite finality for res judicata purposes even if it is not final for purposes of appeal." *Bell v. Taylor*, No.

---

[11] *Lacy* also addressed defendants' failure to provide wheelchair-using detainees with assistance on the ramps to the courthouse. *Lacy*, 2015 WL 5921810, at *5–6; *Lacy*, 2015 WL 7351752, at *1–4. While Crockwell's complaint refers to issues with the ramp at the Leighton courthouse, Crockwell has not identified any statement of fact regarding issues that he experienced with maneuvering the Leighton courthouse ramp, and he cannot rest on his pleadings at the summary judgment stage in response to defendants' motion.

[12] The case is set for a September 2016 jury trial on the individual plaintiffs' damages.

13

15-2343, 2016 WL 3568139, at *5 (7th Cir. July 1, 2016) (collecting cases). Whether a judgment ought to "be considered 'final' in the sense of precluding further litigation of the same issue turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Id.* (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)). *B & B Hardware, Inc. v. Hargis Industries, Inc.*, relied upon by defendants for the proposition that judgment must be "final" to have preclusive effect, does not conflict with the holding in *Bell*, but merely held that final agency decisions could form the basis for issue preclusion. 135 S.Ct. 1293, 1302–03 (2015).

There was nothing tentative or inadequate about the rulings in *Lacy* finding that the Sheriff and Cook County had intentionally discriminated against wheelchair-using detainees appearing at the Leighton courthouse regarding the use of bathrooms. An extensive factual record was developed for the injunction hearing and summary judgment, including seven days of evidentiary hearings (which Cook County described as a bench-trial, [72] at 7). *See Lacy*, 2015 WL 7351752, at *2. Defendants have not filed a motion to reconsider either the injunction or the summary judgment order, and their liability has been firmly established—all that remains is a trial on the individual plaintiffs' damages. Under these circumstances, the partial summary judgment in plaintiffs' favor was a final judgment for the purpose of issue preclusion. *See Bell*, 2016 WL 3568139, at *5.

Crockwell has established on the undisputed facts that he was denied access to an accessible toilet while in the M-house and while appearing at the Leighton courthouse, and that these denials were the result of intentional discrimination. Crockwell is entitled to summary judgment on those ADA claims against the Sheriff and Cook County. Defendants are entitled to summary judgment on Crockwell's ADA claims concerning showers, N-house, Division 10, and the isolation cell.

## IV. Conclusion

Defendants' motions for summary judgment, [58], [61], are granted as to Crockwell's § 1983 claims, and his claims concerning showers, N-house, Division 10, and the isolation cell, but otherwise denied. Crockwell's motion for partial summary judgment on liability as to toilet access at M-house and the Leighton Courthouse, [64], is granted. A status hearing is set for 9/9/16 at 9:30 a.m.

ENTER:

Manish S. Shah
United States District Judge

Date: 8/26/2016